UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                                        Plaintiff,                                    17-CV-3613 (JPO)

                        -v-                                                          OPINION AND ORDER

JAMES H. IM,

                                        Defendant.

J. PAUL OETKEN, District Judge:

        This is a securities fraud case involving trading in commercial mortgage-backed

securites.  According to the SEC, James Im lied to his customers about the price he had paid for

securities he was trying to resell.  According to Im, he was just a salesman haggling for a good

deal.  Im moves to dismiss the Complaint.  For the reasons that follow, the motion is denied.

I.        Background

        James Im was co-head of the commercial mortgage-backed securities ("CMBS") trading

desk for Nomura Securities International.  (Compl. ¶ 18.)  CMBS are asset-backed bonds whose

underlying assets are commercial real estate loans.  (Compl. ¶ 19.)  CMBS are not publicly

listed, so trading generally takes place through dealers like Nomura.  (Compl. ¶ 20.)  Nomura

buys CMBS from its customers and resells them to other customers for a profit.  (Compl. ¶ 25.)

        The SEC alleges that Im misled Nomura's customers in the following ways:

- Im misrepresented the prices at which Nomura had bought the securities.
  For example, when trying to sell CMBS, Im told potential customers that
  he had bought the securities at a high price, in an attempt to get the
  customer to pay a high price.

- Im misrepresented the profit that Nomura was making on the deals—i.e.,
  the difference between Nomura's buying price and Nomura's selling
  price.  For example, when selling securities, Im would try to raise the

selling price by telling potential customers that Nomura's profit was lower than what it actually was.

- Im misrepresented whether Nomura actually owned the securities it was trying to sell. For example, when trying to sell securities to potential buyers, Im told the buyer that he was still negotiating with third-party sellers when, in reality, Nomura already owned the securities.

- Im told potential customers about negotiations and conversations that never actually took place in an attempt to close sales.

(Compl. ¶¶ 25–35.)

The Complaint alleges that Im's fraudulent behavior generated hundreds of thousands of dollars for Nomura's CMBS trading desk. (Compl. ¶ 5.) Im received bonuses totaling $3.79 million, based in part on his fraudulent behavior. (Compl. ¶¶ 5, 80.)

The Complaint asserts that Im's behavior violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and SEC Rule 10b–5. *See* 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. The Complaint also alleges that Im's conduct aided and abetted Nomura's violations of those laws. The Complaint seeks injunctive relief, disgorgement, and monetary penalties.

## II.    Legal Standard

To survive a motion to dismiss for failure to state a claim, plaintiffs must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs plead facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Courts must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006)).

III.    **Discussion**

Im makes three arguments for dismissal: (1) that the Complaint does not adequately allege that his misrepresentations were material, (2) that the Complaint does not adequately allege that he acted with scienter, and (3) that the Complaint does not adequately allege aiding-and-abetting liability.  Each is discussed in turn.

A.    **Does the Complaint Adequately Allege Materiality?**

"A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b–5 where there is 'a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision.'"  *United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015) (alteration in original) (quoting *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013)).  But where the misstatements are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance," the misstatements may be immaterial as a matter of law.  *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 131 (2d Cir. 2011) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)) (internal quotation marks omitted).

Im argues that his negotiating counterparts were sophisticated buyers, and that it was normal—and expected—for parties to overstate their bargaining positions in search of the best deal.  He argues that buyers relied on their detailed market analysis, rather than Im's unsolicited statements about Nomura's buying price, when making purchasing decisions.

The leading case here is *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015).  Litvak was criminally indicted for lying to potential customers about the price his firm had paid for mortgage-backed securities.  A jury convicted Litvak of securities fraud.  On appeal, Litvak argued that his misstatements were, as a matter of law, immaterial to a reasonable investor because they did not relate to the underlying value of the securities.  The Second Circuit

disagreed, holding that the question of materiality—a mixed question of law and fact—was properly reserved for the jury's determination.  The court pointed to the fact that several of Litvak's counterparties testified that the misrepresentations were important to them.  *Id.* at 175– 76.  For that reason, the court concluded that the buying price was a potentially material term.

The court also relied on the "longstanding principle enunciated by the Supreme Court that § 10(b) should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes, and to protect against fraudulent practices, which constantly vary."  *Id.* at 177 (quoting *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 221 (2d Cir. 2014) (per curiam) (internal quotation marks omitted)).  The court concluded:

> Finding Section 10(b) inapplicable here, as a matter of law, would require an impermissibly technical and restrictive construction. There is no dispute that Litvak misrepresented facts related to the securities transactions at issue, and that several of his counterparties' representatives testified at trial that they considered the misrepresentations meaningful in the course of those transactions and that they or their employers were harmed by Litvak's misleading course of conduct. . . .  Thus, enforcement of Section 10(b) here is consistent with the Supreme Court's instruction to apply the statute flexibly . . .  and with the statute's purpose of "remedy[ing] deceptive and manipulative conduct with the potential to harm the public interest or the interests of investors."

*Id.* (quoting *Parkcentral Global Hub*, 763 F.3d at 221, 209) (citations omitted).

*Litvak* is dispositive here.  Im's burden on this motion is a high one: he can prevail only by showing that his misstatements are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Wilson*, 671 F.3d at 131. But while Im's motion argues that misstating one's buying price cannot be material, *Litvak* holds that it can.  For now, it is enough for the SEC to allege that Im misstated Nomura's buying price, that the buying price is an important data point in the CMBS industry, and that the misstatements affected the price that Nomura's customers were willing to pay.  This is why materiality "will

rarely be dispositive in a motion to dismiss." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592

F.3d 347, 360 (2d Cir. 2010); *see also United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.

1991) (noting that the Supreme Court has identified materiality as "especially well suited for jury

determination").[1]

### B.   Does the Complaint Adequately Allege Scienter?

Im's second argument is that the Complaint does not adequately allege scienter.  "To

plead scienter under § 10(b) and Rule 10b-5, Plaintiffs must 'state with particularity facts giving

rise to a strong inference that the defendant acted with the required state of mind.'"  *Menaldi v.*

*Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 585 (S.D.N.Y. 2016) (quoting *Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007)).  "A strong inference of

fraudulent intent may be established either (a) by alleging facts to show that defendants had both

motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness."  *IKB Int'l S.A. v. Bank of Am.*

*Corp.*, 584 Fed. App'x. 26, 27–28 (2d Cir. 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 290–91 (2d Cir. 2006)).

Im argues that he had no motive to commit fraud.  Even though the Complaint alleges

that his bonuses were tied to his sales figures, Im points to the Second Circuit's opinion in *ECA,*

*Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, which held that the

mere fact that a corporate executive's compensation is tied to corporate earnings is too

---

[1]     Im points to the Seventh Circuit's decision in *United States v. Weimert*, which
held that misstating one's negotiating position—for example, saying "this is my final offer"
when it really is not—is too immaterial to constitute wire fraud.  819 F.3d 351, 358 (7th Cir.
2016).  However, *Weimert* dealt with the mail and wire fraud statutes, which are significantly
different from securities statutes.  *See Litvak*, 808 F.3d at 177 (noting the broad remedial scope
of Section 10(b)).  Moreover, *Litvak* is binding authority on this Court, while *Weimert* is not.

generalized to constitute motive to defraud.  553 F.3d 187, 201 (2d Cir. 2009).  However, Im's financial gain was far more direct here: per the Complaint, Im made $3.79 million in bonuses from Nomura based in significant part on the performance of the CMBS desk, which was inflated through the alleged fraud.  *See ECA*, 553 F.3d at 201 (acknowledging that incentive pay could constitute motive to defraud if there is "a direct link between the compensation package and the fraudulent statements").

The Complaint also adequately alleges "strong circumstantial evidence of conscious misbehavior or recklessness."  *IKB*, 584 Fed. App'x. at 27–28.  Specifically, the Complaint alleges that, after lying to a customer about the price at which Nomura bought CMBS, Im had the following electronic conversation with the trader who had sold him the securities:

> Im: he paid 78-24
>
> Seller: per[f]ect
>
> Im: i told him i [bought] at 78-8 actually
>
> Im: sshhhhh
>
> Im: :-)
>
> Seller: ha
>
> Seller: nice one.

(Compl. ¶ 45.)

Im makes a fairly strong counterargument that the fact that he told a counterparty—with whom he would presumably make deals in the future—about his misstatements shows that this practice was commonplace in the industry and not fraudulent.  However, at this point in the case, the role of the seller in this scheme is unclear.  As a result, the Court cannot read that conversation to completely negate the scienter allegations.  Moreover, the fact that Im asked the seller to keep quiet renders "the inference of scienter cogent and at least as compelling as any

opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Time and discovery may indeed show that Im's statements were commonplace in the industry, and that nobody really relied on them. But for now, the Complaint adequately alleges the elements of securities fraud.

C.      **Does the Complaint Adequately Allege Aiding and Abetting?**

Im's final argument is that the Complaint does not adequately allege that he aided and abetted Nomura's violations of the securities laws.

In order for a defendant to be liable as an aider and abettor in a civil enforcement action, the SEC must prove: "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *SEC v. DiBella*, 587 F.3d 553, 566 (2d Cir. 2009) (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985)).

This argument fails too. Nomura is potentially liable for Im's actions under the doctrine of *respondeat superior*. Therefore, the Complaint properly alleges the three elements of aiding-and-abetting liability: (1) Nomura violated the securities laws, (2) Im knew of the violation, and (3) Im substantially assisted Nomura's violation. *See S.E.C. v. Tourre*, No. 10 Civ. 3229, 2014 WL 61864, at *7 (S.D.N.Y. Jan. 7, 2014) ("[T]he fact that [the defendant] was an employee of [his employer], acting within the scope of his employment . . . is sufficient to establish that he aided and abetted a fraud by [his employer] . . . . Based on the evidence that there was a fraudulent scheme to mislead investors, the jury could reasonably conclude that the scheme was executed by [defendant's employer] through its agents (of which [defendant] was one), and that [defendant] then aided and abetted that primary violation. . . ."); *see also id.* (collecting cases).

7

**IV.     Conclusion**

For the foregoing reasons, the motion to dismiss is DENIED.  Im shall file an answer

within fourteen days of this order.  The Clerk of Court is directed to close the motion at Docket

Number 17.

SO ORDERED.

Dated:  February 12, 2018
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge