UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br>v.<br><br>JAMES H. IM,<br><br>                Defendant. | No. 17-cv-3613 (JPO)<br><br>ECF CASE |

**[PROPOSED] JOINT PRETRIAL ORDER**

Having conferred amongst themselves and with the Court pursuant to Rules 16 and 26(a)(3) of the Federal Rules of Civil Procedure, and in accordance with Rule 5(A) of the Individual Rules and Practices in Civil Cases of the Honorable J. Paul Oetken, Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") and Defendant James H. Im ("Defendant" or "Im") respectfully submit the following statements, directions and agreements as the Joint Pretrial Order in this case:

I. **FULL CAPTION OF THE ACTION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAMES H. IM, )<br>)<br>Defendant. ) | No. 17-cv-3613 (JPO)<br><br>ECF CASE |

II. **TRIAL COUNSEL**

The names, addresses, telephone numbers, and email addresses of trial counsel are as follows:

    A.    <u>Counsel for Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC")</u>

          Richard Hong
          Ladan F. Stewart
          Chevon Walker
          SECURITIES AND EXCHANGE COMMISSION
          New York Regional Office
          100 Pearl Street, Suite 20-100
          New York, New York 10004-2616
          (212) 336-0956 (Hong)/hongr@sec.gov
          (212) 336-0153(Stewart)/stewartla@sec.gov
          (212) 336-0090 (Walker)/walkerch@sec.gov

    B.    <u>Counsel for Defendant James H. Im ("Defendant" or "Im")</u>

          Matthew D. Ingber (mingber@mayerbrown.com)
          Robert W. Hamburg (rhamburg@mayerbrown.com)
          MAYER BROWN LLP
          1221 Avenue of the Americas
          New York, New York 10020
          (212) 506-2500

>Michael Martinez (mmartinez@kramerlevin.com)
>Michelle Ben-David (mbendavid@kramerlevin.com)
>KRAMER LEVIN NAFTALIS & FRANKEL LLP
>1177 Avenue of the Americas
>New York, New York 10036
>(212) 715-9404

### III. BRIEF STATEMENT AS TO SUBJECT MATTER JURISDICTION

Plaintiff's Position:  The Court has subject matter jurisdiction over the SEC's federal securities enforcement action pursuant to 28 U.S.C. § 1331 and Sections 20(b), 20(d), 22(a), and 22(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), 77v(a), and 77v(c),] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

Defendant's Position:

Defendant does not challenge Plaintiff's stated basis for subject matter jurisdiction.

### IV. BRIEF SUMMARY OF CLAIMS AND DEFENSES

A. Plaintiff's Summary of Claims

The SEC brought this civil enforcement action against the Defendant, one of two head traders on Nomura Securities International, Inc.'s ("Nomura") commercial mortgage backed securities ("CMBS") trading desk.

The SEC's Complaint alleges that the Defendant committed securities fraud while buying and selling CMBS for Nomura.  From 2010 through 2014, the Defendant, while engaged in CMBS trading, deliberately misled and lied to customers about, among other things, (i) the prices at which Nomura had bought or sold the securities; (ii) the bids and offers that Nomura made or received on the securities; (iii) the compensation that Nomura would receive for intermediating the trades; and/or (iv) who owned the security, often pretending that the Defendant was still negotiating with a third-party seller when Nomura had, in fact, already

3

acquired the security.

The four claims in the Complaint against the Defendant are as follows:

First claim:  Defendant is charged with securities fraud under Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)];

Second claim:  Defendant is charged with securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)];

Third claim:  Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant is charged with aiding and abetting the securities fraud violations of Nomura under Sections 17(a)(1), (2) and (3) of the Securities Act; and

Fourth claim:  Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant is charged with aiding and abetting the securities fraud violations of Nomura under Section 10(b) of the Exchange Act.

As to the Defendant's defenses outlined below, the SEC understands that the Defendant is contesting the following:  (1) whether the Defendant's misstatements and omissions at issue for the trades in the SEC's Complaint were material; (2) whether the Defendant acted with scienter (for those claims requiring scienter, such as those under Section 10(b) and Section 17(a)(1)); and (3) whether there was any false or misleading statement made by the Defendant for Trade 5 in the Complaint.[1]

---

[1]   Defendant also claims that Trade 5 is time-barred by the statute of limitations under 28 U.S.C. § 2462.  Trade 5 is not time-barred, as the National Defense Authorization Act ("NDAA"), a new legislation enacted on January 1, 2021, extended the statute of limitations for SEC scienter-based claims for disgorgement to 10-years and created a 10-year statute of limitations for equitable remedies, including injunctions.  *SEC v. Gallison*, No. 15 Civ. 5456 (GBD), 2022 WL 604258, at *5 (S.D.N.Y. Mar. 1, 2022). "Those changes are applicable to any action pending at the date of the NDAA's enactment."  *Id*.  Moreover, the statute of limitations

Importantly, as this Court already noted in its decision on the Defendant's motion for summary judgment, it appears that "Im concedes that, in six of these transactions [the six other trades in the Complaint], he inflated the price at which Nomura had purchased a bond or pretended that Nomura was still trying to purchase a bond when it in fact had already purchased the bond at a favorable price."  8/24/2020 Opinion and Order at 3 (ECF No. 64).

Moreover, none of the Defendant's defenses have merit.  Indeed, to the extent that the Defendant intends to try all of his previously asserted defenses, this Court has already addressed and ruled on certain of those in this litigation.  *See, e.g.,* 8/24/2020 Opinion and Order at 5-6 (summary judgment decision addressing the materiality issues); 2/12/2018 Opinion and Order at 7 (motion to dismiss decision addressing the aiding and abetting claims) (ECF No. 22).

B.   Defendant's Summary of Defenses

This case centers on whether Defendant James Im committed securities fraud when negotiating with counterparties over the sale price of commercial mortgage-backed securities ("CMBS").

At times relevant to this case, from 2009 to 2014, James Im was a CMBS trader at Nomura Securities International, Inc. ("Nomura").  CMBS are debt securities, often referred to as bonds, for which the underlying assets are commercial mortgage loans, including those for the construction of factories, office buildings, apartment complexes, shopping malls, and other commercial-use properties.  Principal and interest payments on the underlying loans flow to CMBS investors.  Because CMBS bonds are not publicly listed, investors—typically sophisticated investment advisors for managed funds or institutional investors—buy and sell

---

issue relates to the remedies only, not the liability issues, which are to be tried to a jury.  A statute of limitations defense should not be allowed to be injected into this liability trial.

CMBS through "dealers" like Nomura. At all relevant times and in all relevant transactions, Nomura and the individuals it employed on its CMBS desk, including Mr. Im, were engaged in principal to principal transactions with their counterparties. Nomura and its employees were not acting as an agent. All negotiations were arms-length. Nomura and its employees were buying or selling for Nomura's own account. Profit accrued to Nomura on the difference, or spread, between the purchase and sale price on these transactions.

Plaintiff, the Securities and Exchange Commission, initiated this action on May 15, 2017, alleging that Mr. Im made materially false statements to investors in the course of seven (7) CMBS trades (the "Trades") during his time with Nomura. According to Plaintiff, in the course of negotiating the Trades with investors, Mr. Im either misstated the price at which Nomura had previously purchased the bond, the bids or offers being made by other counterparties, or the ownership status of the bond. On the basis of these allegedly material misstatements, Plaintiff asserts four claims against Mr. Im: (1) violation of Section 17(a) of the Securities Act; (2) violation of Section 10(b) of the Exchange Act and Rule 10b-5; (3) aiding and abetting violations of Section 17(a) of the Securities Act by Nomura; and (4) aiding and abetting violations of Section 10(b) of the Exchange Act and Rule 10b-5 by Nomura.

Mr. Im asserts several dispositive defenses to Plaintiff's claims. A non-exhaustive summary of those defenses is set forth below.

*First*, Plaintiff will not satisfy its burden of establishing that Mr. Im's alleged misstatements, made in the course of negotiating CMBS pricing with sophisticated counterparties, were material. Plaintiff must come forward with evidence of a substantial likelihood that the disclosure of the truth would have been viewed by the reasonable CMBS investor as having significantly altered the total mix of information in deciding whether to buy or

sell. *See In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (quoting *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003)); *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018) ("*Litvak II*").

Mr. Im's alleged statements were not material to a reasonable CMBS investor's decisions about whether to buy or sell CMBS bonds. CMBS investors create complex, proprietary quantitative models to value CMBS bonds *prior* to engaging in negotiations for the purchase or sale of specific bonds. The models generate yields and prices that frame the investor's decision regarding whether to own a bond or not, and at what price. Proprietary models incorporate a wide array of quantifiable and verifiable inputs, but—critically—do not account for dealer statements about price and ownership. CMBS investors rely on their proprietary modeling to predict what a bond will yield over the particular investment horizon of the investor and seek to purchase bonds somewhere within a range they deem acceptable in light of that predicted yield.

More importantly, evidence further shows that reasonable CMBS investors, typically seasoned hedge fund portfolio managers, understand dealer statements regarding acquisition price or counterparty bids/offers as a starting point for price negotiations. This is a necessary first step in price negotiations, whether stated expressly as an "opening bid" or euphemistically as an acquisition price that operates as a floor. Such statements do not "significantly alter the total mix of information" that a reasonable investor uses to assess a purchase price of a bond.

Conversely, Plaintiff has adduced no evidence—and will have none at trial—demonstrating that the alleged misstatements resulted in a different purchase price for Mr. Im's counterparties in any of the seven Trades at issue. None of the trading counterparties testified that a better market price was available at the time of their transaction, or that they would have undone the trade if they had later learned of the misstatement.

Plaintiff's failure to establish that the alleged misstatements in this case were material is fatal to each of the four claims in this case.

**Second**, Plaintiff has not satisfied its burden of establishing that Mr. Im acted with scienter.  Scienter is a mental state "embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  To satisfy that burden under 10b-5, Plaintiff "must produce evidence (1) showing that the defendant[] had motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018).  Evidence of falsity, on its own, is insufficient.  *Id*.  To satisfy its burden under Section 17(a), Plaintiff must prove that Mr. Im acted negligently.  *SEC v. Wey*, 246 F. Supp. 3d 894, 912 (S.D.N.Y. 2017).

Plaintiff cannot prove that Mr. Im had motive to commit fraud, which requires evidence of "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (internal quotation marks omitted); *see also SEC v. Treadway*, 430 F. Supp. 2d 293, 331 (S.D.N.Y. 2006).  Critically, the "concrete benefit" necessary for scienter must go beyond the desire for a corporation to appear profitable or to increase salary or bonus compensation.  *See Treadway*, 430 F. Supp. 2d at 331; *Wyche v. Advanced Drainage Sys., Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017); *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009); *see also Yorkville Advisors, LLC*, 305 F. Supp. 3d at 512-13.  There is no evidence that Mr. Im's alleged misstatements altered the prices in any of the seven Trades or impacted Nomura's profits; likewise, there is no evidence that Mr. Im's compensation was

impacted by any specific profits to the CMBS trading desk, let alone those connected to the alleged misstatements.

Nor can Plaintiff prove that Mr. Im's conduct was "an extreme departure from the standards of ordinary care"—much less *any* standard of care—or "highly unreasonable." *Kalnit*, 264 F.3d at 139, 142; *see also SEC v. Wey*, 246 F. Supp. 3d 894, 912-13 (S.D.N.Y. 2017). The types of dealer misstatements that Mr. Im is accused of making are not uncommon in the CMBS market and were understood by market participants to set the stage for a price negotiation.

Plaintiff's failure to establish that the alleged misstatements in this case were made with scienter is fatal to each of the four claims in this case.

***Third***, Plaintiff's claim relating to Trade 5[2] fails because Plaintiff has adduced no evidence of a misstatement. Though Plaintiff has identified negotiation statements between Mr. Im and a counterparty, Shaun Heelan of DW Investment Management on Friday, April 23, 2010, there was no trade consummated on that date. Bids and offers clear at the end of each trading day and do not carry over to the next trading day without being refreshed. There is no evidence of any bid on Trade 5 before the transaction was consummated on Monday, April 26, 2010. There is simply no alleged misstatement. Absent any evidence of a misstatement on Trade 5, each of Plaintiff's four claims fail with respect to this Trade.

***Fourth***, the Plaintiff's two claims predicated on an aiding-and-abetting theory of liability fail because Plaintiff has not adduced evidence that Nomura (the supposed principal actor that Mr. Im aided and abetted) committed a fraud separate and apart from that which Mr. Im is alleged to have committed. Thus, Plaintiff fails to establish the existence of "a securities law violation by the primary wrongdoer." *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983).

---

[2]   Trade numbers correspond with those listed in the SEC's Complaint. (Dkt. No. 1).

Accordingly, Plaintiff's third and fourth claims for relief fail in their entirety.

***Finally***, Plaintiff filed its Complaint on May 15, 2017, more than five years after the occurrence of Trade 5 on April 26, 2010. 28 U.S.C. § 2462.

## V.   JURY TRIAL DURATION

### A.   Plaintiff's Statement:

The parties have requested a jury trial. The SEC anticipates that it will likely take approximately 10 trial days (for the SEC's case and the defense's case) to try this matter to a jury.

### B.   Defendant's Statement:

Defendant believes that the trial can be completed in 5 trial days. The case will be tried to a jury.

## VI.   CONSENT TO TRIAL BY A MAGISTRATE JUDGE

The parties have not consented to trial of the case before a Magistrate Judge.

## VII.   STIPULATIONS OR AGREED STATEMENTS OF LAW OR FACT

### A.   Plaintiff's Proposed Stipulations:

The SEC submitted a list of factual and legal stipulations to the Defendant. From those, the parties were able to reach agreement on one factual stipulation and two legal stipulations. The stipulations are as follows:

Factual stipulation:

1.   Nomura Securities International, Inc. ("Nomura"), a New York corporation, is (and was from 2010 through 2014) a broker-dealer with offices in New York, New York, and is a U.S. affiliate of Nomura Holdings, Inc., a public Japanese financial holding company.

Legal stipulations:

    1.      The CMBS are "securities" under the federal securities laws.

    2.      The offer, sale, or purchase of CMBS uses means and instrumentalities of interstate commerce.

    B.      <u>Defendant's Proposed Stipulations</u>:

None.

## VIII. LIST OF TRIAL WITNESSES

    A.  <u>Plaintiff's Listing of Witnesses</u>

Please see Exhibit 1 attached hereto.

    B.  <u>Defendant's Listing of Witnesses</u>

The witnesses Defendant currently intends to call to testify in his case-in-defense are listed below. This list does not include witnesses to be called for rebuttal and/or impeachment. Defendant reserves the right to call any witness identified by Plaintiff or called by Plaintiff at trial. Finally, Defendant reserves the right to amend this list and to call additional witnesses at trial as needed.

1. Buck Burnaman, Defendant's expert witness. Mr. Burnaman will testify in person regarding several aspects of the CMBS industry, including secondary market trading, portfolio management, and industry custom and practice in relationships between counterparties.

2. Toby Maitland Hudson, counterparty in Trades 1, 3, and 6, employed at all relevant times by Saba Capital Management. We expect Mr. Maitland-Hudson will testify in person regarding his interactions with Mr. Im in connection with Trades 1, 3, and 6.

3. James Im, Defendant, former trader at Nomura Securities. Mr. Im will testify in person regarding each of the seven Trades.

4. James Jordan, counterparty in Trade 7, employed at all relevant times by Taconic Capital. We expect Mr. Jordan will testify in person regarding his interaction with Mr. Im in connection with Trade 7.

    5.    Chris Lau, counterparty in Trade 4, employed at all relevant times by Pine River Associates. We expect Mr. Lau will testify in person regarding his interaction with Mr. Im in connection with Trade 4.

    6.    Vlad Muste, counterparty in Trade 7, employed at all relevant times by Tricadia Capital. We expect Mr. Muste will testify in person regarding his interaction with Mr. Im in connection with Trade 7.

    7.    Wendy Pei, counterparty in Trades 1 and 2, employed at all relevant times by Ellington Investment Management. We expect Ms. Pei will testify in person regarding her interactions with Mr. Im in connection with Trades 1 and 2.

    8.    Defendant will also call any custodians necessary to authenticate documents.

## IX. DEPOSITION DESIGNATIONS TO BE OFFERED BY THE PARTIES

Plaintiff's Position:

The SEC intends to call all witnesses live. In addition, certain of the statements that Defendant has made in his deposition may be introduced as his admissions in the SEC's case-in-chief. Fed. R. Civ. P. 32(a)(3).

Defendant's Position:

Defendant currently does not designate any deposition testimony. However, Defendant reserves the right to object and/or counter-designate in response to proposed deposition designations made by Plaintiff.

## X. EXHIBIT LISTS

A.    Plaintiff's Exhibits

For a list of exhibits that the SEC will likely offer in its case in chief, please see Exhibit 2 attached hereto.

B.     Defendant's Exhibits

Defendants' exhibit list is annexed hereto as Exhibit 3.  Defendant also reserves the right to rely on any exhibit identified by Plaintiff, whether Plaintiff introduces the exhibit or not.

Pursuant to Rule 5(A)(x) of the Court's Individual Rules and Practices in Civil Cases, the parties have indicated those exhibits to which no party objects on grounds of authenticity with one asterisk, and those to which no party objects on any ground with two asterisks.

## XI.   STATEMENT OF DAMAGES CLAIMED AND ANY OTHER RELIEF SOUGHT

Plaintiff's Position:

The SEC does not seek "damages," but seeks injunctions, civil penalties, and disgorgement, with prejudgment interest, against Defendant in this action.  Such remedies are to be determined by the Court in the event that the jury finds Defendant liable on any of the SEC's four claims at trial.  The SEC anticipates that the parties would submit separate post-trial legal memoranda in connection with the remedies issues.

Defendant's Response:

Plaintiff seeks, but has failed to establish any basis for, the following forms of relief: (1) an order permanently enjoining Mr. Im "from committing, aiding and abetting or otherwise engaging in conduct that would make him liable for the violations of the federal securities laws alleged"; (2) an order directing Mr. Im to disgorge any ill-gotten gains he obtained as a result of the violations alleged in this case, and to pay prejudgment interest thereon; (3) an order directing Mr. Im to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)]; and (4) such other and further relief as the Court may deem just and proper.

IT IS FURTHER REQUESTED THAT, in order to prevent manifest injustice or for good cause shown, at trial of the action or prior thereto, upon application of counsel for either party made in good faith or upon motion of the Court, shall modify this Pretrial Order upon such

14

conditions as the Court may deem just and proper.

Dated:      March 25, 2022
            New York, New York

                                            Respectfully submitted,

                                            SECURITIES AND EXCHANGE COMMISSION

                                            By:  /s/ Richard Hong
                                            Richard Hong
                                            Ladan F. Stewart
                                            Chevon Walker
                                            New York Regional Office
                                            100 Pearl Street, Suite 20-100
                                            New York, New York 10004-2616
                                            (212) 336-0956 (Hong)
                                            hongr@sec.gov

                                            Attorneys for Plaintiff


                                            KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                                  By: /s/ Michael Martinez
                                            Michael Martinez
                                            1177 Avenue of the Americas
                                            New York, NY 10036
                                            Telephone: (212) 715-9100
                                            MMartinez@kramerlevin.com

                                            MAYER BROWN LLP

                                            Matthew D. Ingber
                                            1221 Avenue of the Americas
                                            New York, NY 10020
                                            Telephone: (212) 506-2500
                                            MIngber@mayerbrown.com

                                            *Attorneys for Defendant James H. Im*


SO ORDERED:

_____
HON. J. PAUL OETKEN
UNITED STATES DISTRICT JUDGE

Dated: _____, 2022