UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,                          17-CV-3613 (JPO)

                  -v-                                             ORDER

JAMES H. IM,

                              Defendant.

J. PAUL OETKEN, District Judge:

        Attached is a draft of the jury charge, which was provided to counsel for the parties by

email on the evening of May 3, 2022.

        SO ORDERED.

Dated:  May 4, 2022
        New York, New York

                                                    _____
                                                           J. PAUL OETKEN
                                                     United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,                              17-CV-3613 (JPO)

                 -v-

JAMES H. IM,

                              Defendant.

# <u>JURY INSTRUCTIONS</u>

1

I.   General Introductory Instructions .................................................................................. 4
     A.   Introductory Remarks and Role of the Court .......................................................... 4
     B.   The Role of the Jury ................................................................................................ 5
     C.   The Role of Counsel ................................................................................................ 5
     D.   All Parties Equal Before the Court / Government Treated Like Any Other ................... 6
     E.   Burden of Proof — Preponderance of the Evidence ............................................... 6
II.  Substantive Law ............................................................................................................. 7
     A.   Statutory Background and Overview of the Claims ................................................ 7
     B.   Claim #1: Section 10(b) and Rule 10b-5 ................................................................ 8
     C.   Claim #2: Section 17(a) ......................................................................................... 12
     D.   Claim #3: Aiding and Abetting Section 10(b) and Rule 10b-5 ............................ 14
     E.   Claim #4: Aiding and Abetting Section 17(a) ...................................................... 16
     F.   Jurors Not to Consider Relief ............................................................................... 17
III. Evaluation of Evidence ................................................................................................ 18
     A.   What Is Evidence ................................................................................................... 18
     B.   What Is Not Evidence ............................................................................................ 18
     C.   Direct and Circumstantial Evidence ..................................................................... 20
     D.   Inferences .............................................................................................................. 21
     E.   Credibility of Witnesses ........................................................................................ 22
     F.   Bias and Interest .................................................................................................... 23
     G.   Preparation of Witnesses ....................................................................................... 24
     H.   Impeachment of Witnesses — Prior Inconsistent Statements ............................... 25
     I.   Defendant's Admissions ........................................................................................ 25
     J.   Expert Testimony ................................................................................................... 26
     K.   Charts and Demonstrative Exhibits ....................................................................... 26
     L.   Rulings on Evidence and Objections ..................................................................... 27
     M.   Jurors Not to Speculate About Person Not on Trial ............................................. 28
     N.   Not All Evidence Needed ...................................................................................... 28
     O.   Sympathy and Impartiality .................................................................................... 28
IV.  Deliberations ................................................................................................................ 29
     A.   Duty to Deliberate ................................................................................................. 29
     B.   Right to See Exhibits and Hear Testimony; Communications with Court ................ 30
     C.   Juror Note-Taking .................................................................................................. 31
     D.   Verdict Form .......................................................................................................... 31
     E.   Duties of Foreperson .............................................................................................. 31

F.   Return of Verdict and Jury Oath .................................................................... 32

G.   Closing Comments ........................................................................................ 32

I.      **General Introductory Instructions**

    A.      **Introductory Remarks and Role of the Court**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  We have reached the point where you are about to undertake your final function as jurors.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

My duty at this point is to instruct you as to the law.  There are four parts to these instructions.  First, I'm going to give you some general instructions about your role and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I will give you instructions relating to how to evaluate evidence.  Fourth, I'll give you some final instructions about procedure.

It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney or witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

Remember, you are to consider these instructions together as a whole; you are not to isolate or give undue weight to any single instruction.

**B.    The Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass on the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else that I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.  Any opinion I might have regarding the facts is of absolutely no consequence.  It is your sworn duty, and you have taken the oath as jurors, to determine the facts.

**C.    The Role of Counsel**

Just as I have my duties as a judge and you have your duties as jurors, it has been the duty of each attorney in this case to object when the other side offered testimony or other evidence that the attorney believed is not properly admissible.  It has been my job to rule on those objections.  Therefore, why an objection was made or how I ruled on it is not your business.  You should draw no inference from the bare fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences outside of your hearing.  These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

To be clear, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### D.      All Parties Equal Before the Court

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty with an attitude of complete fairness and impartiality.

The fact that the case has been brought by the SEC entitles the SEC to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand equal before the law.

### E.      Burden of Proof — Preponderance of the Evidence

Before I instruct you on the issues you must decide, I want to define for you the standard under which you will decide whether the SEC has met its burden of proof on a particular issue. The standard that applies in this case is the preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  This means that the party bearing the burden has to produce evidence that, considered in light of all of the facts, leads you to believe that what the party claims is more likely true than not.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents, or the length of time taken by either side.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

6

The concept of preponderance of the evidence is often illustrated with the idea of a scale. You put on one side all of the credible evidence favoring the party bearing the burden and on the other all of the credible evidence favoring the opposing party.  So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence—the party must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.

It is important to remember that this is a civil case.  You may have heard of the "beyond a reasonable doubt" standard in criminal cases.  That requirement does not apply to a civil case and you should put it entirely out of your mind.

## II.    Substantive Law

I am now going to instruct you on the substantive law to be applied in this lawsuit.  In these instructions you will hear me use the word "security."  A "security" is commonly defined as a stock, bond, note, or other document representing a share of stock in a company or a debt owed by a company.  The term "security," for purposes of this case, refers to investments or interests in commercial mortgage-backed securities (or "CMBS").

### A.  Statutory Background and Overview of Claims

The SEC brings claims under two different federal securities laws that were passed in the 1930s.  The first statute is called the Securities Act of 1933 or "Securities Act" for short.  The

7

second statute is the Securities Exchange Act of 1934 or "Exchange Act" for short.  Both the Securities Act and the Exchange Act are intended to protect investors by prohibiting certain deceptive practices relating to securities.  The SEC has also passed Rules under these laws. These Rules have the force of law and must be followed.

The SEC brings four claims against the Defendant.  The first two claims allege that the Defendant committed "primary" violations of the federal securities laws.  The first alleges that the Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The second alleges that the Defendant violated Section 17(a) of the Securities Act.

The third and fourth claims allege that the Defendant committed what I will call "secondary" violations of the federal securities laws.  These claims allege that the Defendant is liable because he aided and abetted another entity that committed a primary violation of the Securities Act or the Exchange Act.  The third alleges that the Defendant aided and abetted Nomura in violating Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. The fourth alleges that the Defendant aided and abetted Nomura in violating Section 17(a) of the Securities Act.  The SEC alleges that Nomura is responsible for the Defendant's actions and that the Defendant substantially assisted in Nomura's violations.

**B.  Claim #1: Section 10(b) and Rule 10b-5**

I will start with the claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  To prevail on a claim under Section 10(b) and Rule 10b-5, the SEC must establish, by a preponderance of the evidence, that the Defendant did one of the following three things, directly or indirectly:

(a)  employed a device, scheme, or artifice to defraud;
(b)  made an untrue statement of a material fact or failed to state a material fact that was necessary to prevent the statements that were made from being misleading under the circumstances; or

(c) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

For each, the SEC must establish, by a preponderance of the evidence, that the fraud was material from the perspective of a reasonable investor.  In addition, the SEC, must establish, by a preponderance of the evidence, that the Defendant acted with "scienter."

### 1.  Rule 10b-5: Three Separate Subparts

#### a.  Rule 10b-5(a)

To establish what is called a Rule 10b-5(a) claim, the SEC must show that the Defendant directly or indirectly, employed a device, scheme, or artifice to defraud (with "scienter").  A 'device, scheme, or artifice to defraud' describes the particular mechanism by which a person accomplishes a fraudulent objective.  A "device" is "something that is devised or formed by design.  A "scheme" is a project, plan or program of something to be done.  An "artifice" is an artful stratagem or trick.  A person has violated this provision if he has engaged in conduct that produces a false impression.  "Fraud" is a general term that that covers efforts that an individual may devise to take advantage of others by deception.

#### b.  Rule 10b-5(b)

To establish what is called a Rule 10b-5(b) claim, the SEC must show that the Defendant, directly or indirectly, made an untrue statement of a material fact or failed to state a material fact that was necessary to prevent the statements that were made from being misleading under the circumstances (with "scienter").

In order for you to find that the Defendant violated Section 10(b) and Rule 10b-5(b), you must find that he personally made a materially false or misleading statement to Nomura's customers, or that the Defendant was the person with ultimate authority over a false or misleading statement to customers, including its contents and how to communicate it.

9

You must determine whether any of the Defendant's statements were false or misleading when they were made. You may find that statements of half-truths, or statements that omit important facts, are deceptive under Section 10(b) and Rule 10b-5(b) even if the spoken or written words were literally true. The deception need not be based on spoken or written words alone. The circumstances in which the statements are made may make literally accurate statements false or deceptive.

To find the Defendant liable under this provision, you must be unanimous as to which particular misstatement or omission was false or misleading.

### c. Rule 10b-5(c)

To establish what is called a Rule 10b-5(c) claim, the SEC must show that the Defendant, directly or indirectly, engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person (with "scienter"). As I mentioned, fraud is a general term that covers means that individuals devise to take advantage of others by deception. A person has violated this provision if he has engaged in conduct that produces a false impression. The word "would" as in "would operate as a fraud or deceit upon any person" means that the acts or practices need not have succeeded in defrauding or deceiving someone.

The SEC alleges that the Defendant violated each of these three subsections under Section 10(b) and Rule 10b-5 while trading commercial mortgage-backed securities for Nomura. Specifically, the SEC alleges that the Defendant made material misstatements and omissions concerning (i) the prices at which Nomura bought or sold the securities; (ii) the bids and offers that Nomura made or received on the securities; (iii) who owned the security at the time of negotiations; and (iv) the compensation that Nomura would receive for intermediating the trades, in the form of the difference, or "spread," between its purchase and sale prices. In addition, the

SEC alleges that the Defendant fabricated negotiations and conversations with nonexistent third parties in order to embellish his misstatements.

### 2.   Second Element: Materiality

The second element that the SEC must establish by a preponderance of the evidence to establish the Section 10(b) and Rule 10b-5 claims is that the fact misstated or omitted was "material" under the circumstances.  This is true for all three types of Rule 10b-5 claims.  A fact is "material" if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy or sell the securities at issue.  An omission of a fact is "material" if a reasonable investor would have viewed the disclosure of that fact as significantly altering the total mix of information available to someone deciding whether to buy or sell the securities at issue.

### 3.   Third Element: Scienter

The third element the SEC must prove by a preponderance of the evidence to establish the Section 10(b) and Rule 10b-5 claims is that the Defendant acted with "scienter."  This is also true for all three types of Rule 10b-5 claims.  Acting with scienter means with "intent to defraud," "knowingly," or with "reckless disregard for the truth."  The question of whether a person acted with scienter is a question of fact for you to determine, like any other question of fact.  This question requires you to make a determination as to one's state of mind at the time a statement was made, rather than with the benefit of hindsight.

"Intent to defraud," in the context of the securities laws, means to act knowingly and with the intent to deceive.  A person acts "knowingly" when he acts intentionally and deliberately, rather than mistakenly or inadvertently.  A person acts "recklessly" when he engages in conduct that represents an extreme departure from the standards of ordinary care.  It is not necessary for

you to find that the Defendant intended to injure.  It is sufficient that he acted in a way that was a departure from the standard of ordinary care for a dealer in the securities industry, such that the risk of misleading investors was either known to the Defendant or so obvious that the Defendant must have been aware of it.  In the context of securities law, a person can also act recklessly if he makes a false statement with reckless disregard for whether a statement is true or false, if he acts with disregard of a danger of misleading investors that an ordinary person under the circumstances would have seen as an obvious one, or, in the case of omissions, makes a statement with reckless disregard for the material nature of those omissions.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  A person's subjective intent and knowledge may be established through circumstantial evidence, including evidence of the person's words, conduct, and acts; the surrounding circumstances; and the rational or logical inferences that may be drawn therefrom.  A defendant's belief that a customer will not be harmed does not necessarily negate a finding of scienter.

### 4.  No Proof of Investor Reliance or Harm Required

The SEC is not required to prove that any market participant actually relied on the pricing information that it asserts the Defendant wrongfully injected into the market.  Likewise, the SEC does not need to prove that anyone trading in the market was injured by the Defendant's conduct.

### C.  Claim #2: Section 17(a)

The SEC also contends that the Defendant violated Section 17(a) of the Securities Act. Section 17(a) of the Securities Act generally prohibits fraud in the offer or sale of securities.  To prevail on a claim under Section 17(a), the SEC must prove by a preponderance of the evidence that the Defendant did one of the following three things:

(1) employed any device, scheme, or artifice to defraud; or
(2) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
(3) engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

For each, as under Section 10(b) and Rule 10b-5, the SEC must establish, by a preponderance of the evidence, that the fraud was material from the perspective of a reasonable investor. In addition, the SEC, must establish, by a preponderance of the evidence, an element relating to the mental state of the Defendant while he committed the alleged fraud.

### 1. Section 17(a): Three Separate Subparts

For purposes of its Section 17(a) claim, the SEC is relying on the same alleged conduct and misstatements or omissions that I referenced in discussing the SEC's Section 10(b) and Rule 10b-5 claims. As you can see, the initial elements of a Section 17(a) violation are substantially the same as those under Section 10(b) and Rule 10b-5, about which I have already instructed you, including the definition of "untrue statement of a material fact or any omission" and "device, scheme, or artifice to defraud."

There is one important difference. To prove a violation of Section 17(a)(2), the SEC must also establish that the Defendant obtained money or property by means of the charged misstatement or omission. "By means of" means to use. "To obtain money or property" means to get or receive money or property in some manner. To satisfy this standard, the SEC must prove that the Defendant obtained money or property for his own or for Nomura's benefit.

### 2. Second Element: Materiality

For a Section 17(a) claim, as under Section 10(b) and Rule 10b-5, the second element that the SEC must prove by the preponderance of the evidence is that the fact misstated or omitted was "material" under the circumstances. The definition is the same for both sections.

13

### 3.  Third Element: Mental State

The third element that the SEC must prove by a preponderance of the evidence is an element relating to the mental state of the Defendant.  To prove a violation of Section 17(a)(1), like Section 10(b) and Rule 10b-5, the SEC must establish "scienter," that is, that the Defendant acted knowingly or recklessly.  But to prove a violation of subsections 17(a)(2) or 17(a)(3), the SEC need only prove that the Defendant acted with "negligence."  This means that even if you find that the Defendant did not violate Section 10(b), Rule 10b-5, or Section 17(a)(1), which require scienter, you may nonetheless find the Defendant liable under Sections 17(a)(2) and (3) if you find that the Defendant acted negligently.

Negligence is the failure to use reasonable care. Negligent conduct is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances. Reasonable care means the degree of care that a reasonably prudent person would use under similar circumstances.  Negligence may consist of doing something that a reasonably prudent person would not do under similar circumstances. It may also consist of failing to do something that a reasonably prudent person would do under similar circumstances.

### D.  Claim #3: Aiding and Abetting Section 10(b) and Rule 10b-5

In addition, the SEC alleges that, in violation of Section 20(e) of the Exchange Act, the Defendant aided and abetted Nomura's violations of Section 10(b) of the Exchange Act and Rule 10b-5.  Section 20(e) provides that:

> any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of [the Exchange Act], or of any rule or regulation issued under [the Exchange Act], shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

Likewise, to prevail on a claim under Section 20(e) of the Exchange Act, the SEC must establish, by a preponderance of the evidence, each of the following elements against the Defendant:

(1) That Nomura violated the Exchange Act in at least one of the ways I have just
    described to you;
(2) That the Defendant knew of, or was reckless in not knowing of, that violation by
    Nomura;
(3) That the Defendant provided substantial assistance to Nomura in that violation.

### 1.   First Element: Nomura's Primary Violation of Section 10(b) and Rule 10b-5

The SEC must first establish by a preponderance of the evidence that another person or

entity — here, Nomura — committed a primary violation of Exchange Act Section 10(b) and Rule

10b-5.  The SEC relies on Mr. Im's statements to show that Nomura committed a primary violation.

Nomura is a corporation.  A corporation may only act through its employees or agents.

Therefore, to prove liability against Nomura, the SEC must prove that an agent of the corporation

committed a culpable act with the requisite mental state and that the act is attributable to Nomura.

A corporation such as Nomura is liable for the acts of an employee committed within the

scope of his employment.  An employee acts within the scope of his employment when performing

work assigned by the employer or engaging in a course of conduct subject to the employer's control.

An employee's act is not within the scope of employment when it occurs within an independent

course of conduct not intended by the employee to serve any purpose of the employer.

### 2.   Second Element: Knowledge or Reckless Disregard

To satisfy the second element, the SEC must show that the Defendant knew of or

recklessly disregarded Nomura's violation of the Exchange Act.

As I have already instructed you, acting with scienter includes acting with knowledge or

in reckless disregard of the truth.  You may use those same definitions here.

When deciding whether the Defendant acted knowingly or in reckless disregard of the

truth, you may take into account the degree to which the Defendant provided substantial

assistance.  The more assistance the Defendant provided, the easier you may find it is to

conclude that the Defendant acted with scienter.  The reverse is true as well.

15

### 3.   Third Element: Substantial Assistance

As to the third element, the SEC must show that the Defendant provided substantial assistance to Nomura's violation.  To satisfy the substantial assistance component of Section 20(e), the SEC must show that the Defendant in some way associated himself with the activity that constituted a violation of the Exchange Act, that he participated in it as something he wished to bring about, and that he sought by his action to make it succeed.  A Defendant may substantially assist in a violation of the Exchange Act either by undertaking some affirmative action or by failing to act if the inaction was intended to aid the violation or was in conscious and reckless violation of a duty to act.  The SEC does not need to prove that the Defendant directly or indirectly caused the activity that constitutes the violation of the Exchange Act.

The degree of substantial assistance that the SEC must show depends on the degree of the Defendant's knowledge or recklessness.  If you find that the Defendant had actual knowledge that Nomura was engaged in activity in violation of the Exchange Act, the easier you may find it to conclude that the Defendant's action or inaction provided substantial assistance.  The reverse is true as well.

A person may commit his own violation of the federal securities laws and also substantially assist another in violating those law.  Thus, one person can be found to have both primary and secondary liability under the federal securities laws.

### E.  Claim #4: Aiding and Abetting Section 17(a)

Finally, the SEC claims that the Defendant is liable under Section 15(b) for aiding and abetting Nomura's violations of Section 17(a) of the Securities Act.  Section 15(b) provides that:

> any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of [the Securities Act], or of any rule or regulation issued under [the Securities Act], shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

The elements of a claim under Section 15(b) of the Securities Act are the same as the elements for a claim under Section 20(e) of the Exchange Act, except that the primary violation under Section 15(b) must be a violation of the Securities Act instead of the Exchange Act.

To prevail on a claim under Section 15(b), the SEC must establish, by a preponderance of the evidence, each of the following elements against the Defendant:

(1) That Nomura violated the Securities Act in at least on of the ways I have just described to you;
(2) That the Defendant knew of, or was reckless in not knowing of, that violation;
(3) That the Defendant provided substantial assistance in that violation.

I have already instructed you on the meaning of the terms that appear in each of the above elements. You must use those same definitions here.

**F.  Jurors Not to Consider Relief**

You are to determine whether the Defendant is liable for violating the federal securities laws. Because this is a civil case, the Defendant's liability will not result in any term of imprisonment.

However, this is not the kind of case in which the jury decides what relief or remedy should be ordered against the Defendant. That will be my job if you find that the Defendant is liable. In considering whether the Defendant is or is not liable for violating the federal securities laws, the question of what remedy I might impose if you were to find the Defendant liable should not in any way enter into or influence your deliberations. Your function is to weigh the evidence and to determine whether the SEC has proved by a preponderance of the evidence that the Defendant is or is not liable based on the evidence and the law. Therefore, I instruct you not to consider relief or any possible remedy in any way in your deliberations in this case.

### III.      Evaluation of Evidence

#### A.      What Is Evidence

Now, I have repeatedly referred to the evidence in this case. This raises an important question: what is evidence? I instruct you that evidence consists of the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties. In determining the facts, you must rely upon your own recollection of the evidence.

##### 1.   Sworn Testimony of Witnesses

You have heard testimony from witnesses who spoke under oath.

##### 2.   Deposition Testimony

In addition, you have watched videos of the Defendant, who testified at a proceeding known as a deposition.  At some point before this trial began the witness or party, under oath, answered certain questions asked by the lawyers.  The segments of the examination that you watched are to be considered as if he were testifying from the witness stand.

##### 3.   Stipulation of Facts

You have heard evidence in the form of stipulations that contain facts that were agreed to be true. In such cases, you must accept those facts as true. However, it is for you to decide what weight, if any, to give to those facts.

#### B.  What Is Not Evidence

What, then, is not evidence? I instruct you that the following does not count as evidence:

##### 1.   Stricken or Excluded Testimony Is Not Evidence

Testimony that I have stricken or excluded is not evidence. You may not use it in rendering your verdict. If certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the limited purpose I indicated.

### 2.   Exhibits Not Received into Evidence Are Not Evidence

Any exhibit that was not received into evidence is not evidence. Thus, exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

### 3.   Redactions Are Not Evidence

Among the exhibits received in evidence there may have been some documents that are redacted. Redacted means that part of the document was taken out. You are to concern yourself only with the item admitted into evidence. You should not consider any possible reason why the other part has been redacted.

### 4.   Arguments by Lawyers Are Not Evidence

Arguments by the lawyers are not evidence. The reason is simple: advocates are not witnesses. The opening and closing arguments of both sides explain how each side wants you to analyze the evidence, which consists of the testimony of witnesses, the documents and other exhibits that were entered into evidence, and the stipulations of the parties. What the lawyers have said to you is intended to help you understand the evidence—or the lack of evidence—as you deliberate to reach your verdict. However, if your recollection of the facts differs from the lawyers' opening statements, questions to witnesses, or summations, it is your recollection that controls, not theirs. For the same reasons, you are not to consider a lawyer's or a party's questions as evidence. Only the witnesses' answers are to be considered evidence, not the questions.

### 5.   Statements of the Court Are Not Evidence

Any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

### C. Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict. Direct evidence is direct proof of a fact, such as when a witness testifies to a fact based on what he or she personally saw, heard, or observed. In other words, when a witness testifies about a fact in issue that is known of the witness's own knowledge—by virtue of what he or she sees, feels, touches, or hears—that is called direct evidence of that fact. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer"—or the expression "to draw an inference"—means to find that a fact exists from proof of another fact. In deciding whether to draw an inference, you must look at and consider all the facts in the light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

For example, assume that when you came into the Courthouse this morning the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of the fact that it was raining. But, on the

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact.  The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.

Circumstantial evidence is of no less value than direct evidence.  The law makes no distinction between the two, but simply requires that you, the Jury, decide the facts in accordance with all the evidence, both direct and circumstantial.

### D.      Inferences

During the trial, you may have heard me or the lawyers use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, that you infer some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The SEC asks you to draw one inference, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you, the jury, are permitted to draw—but not required to draw—from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

21

So while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

> ### E.   Credibility of Witnesses

You have had the opportunity to observe the witnesses. It will now be your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

To that end, I am going to give you a few general instructions on how you may determine whether witnesses are credible and reliable, whether witnesses told the truth at this trial, and whether they knew what they were talking about. It is really just a matter of using your common sense, your good judgment, and your experience.

First, consider how well the witness was able to observe or hear what he or she testified about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly and/or candidly? Were the witness's answers direct or were they evasive? Consider the witness's intelligence, demeanor, manner of testifying, and the strength and accuracy of the witness's recollection. Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider the substance of the testimony. How does the witness's testimony compare with other proof in the case? Is it corroborated or is it contradicted by other evidence? If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?

You may consider whether a witness had any possible bias or relationship with a party or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness unworthy of belief, but it can. These are simply factors that you may consider.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

In summary, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all the other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and you alone—not the lawyers, not the witnesses, and not me as the judge—to decide the credibility of witnesses who testified and the weight that their testimony deserves. The ultimate question for you to decide in passing upon credibility is: Did the witness tell the truth before you?

### F.      Bias and Interest

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.  You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and by applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### G.    Preparation of Witnesses

You heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### H.   Impeachment of Witnesses — Prior Inconsistent Statements

You may have heard evidence that at some earlier time a witness has said or done something which counsel suggests was inconsistent with the witness's trial testimony.

The prior inconsistent statement was placed before you solely for the purpose of attacking the credibility of the witness. If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

Evidence of a prior inconsistent statement by a witness who is a party to this action, that is, a prior statement made by Mr. Im, may be considered by you both as affirmative evidence in determining liability and for purposes of helping you decide whether to believe the testimony of that party.

In making these determinations, you may consider whether there was, in fact, any inconsistency, whether the witness purposely made a false statement, or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it was a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appeals to your common sense. It is your duty, based on all the evidence and your own good judgment, to decide how much weight to give any such inconsistency.

### I.   Defendant's Admissions

You have also heard evidence during the trial of statements made by the Defendant before the trial, including statements made during the SEC's investigations.  You may consider the prior statements of the Defendant as admissions, which means that such statements are affirmative evidence of the truth of what the Defendant said before the trial.  As with other witnesses, you may also consider the prior statements of the Defendant before the trial if inconsistent with his trial testimony in deciding what weight, if any, to give to his trial testimony.

**J.      Expert Testimony**

You have heard testimony from expert witnesses. An expert is allowed to express an opinion on those matters about which the expert may have special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field may be able to assist you in understanding the evidence and in reaching your independent decision on the facts.

In weighing an experts' testimony, you may consider the expert's qualifications, his opinions, the reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether to believe a witness's testimony.

The expert's testimony was based on particular facts, as the expert obtained knowledge of them and testified to them before you, or as the attorneys who questioned the expert asked the expert to assume. You may reject an expert's opinion if you find the facts to be different from those that formed the basis for the opinion.

You may give the expert testimony whatever weight, if any, you find it deserves in light of all of the evidence in the case and the witness' interest in the proceeding, including any compensation for work they may have received. You should not, however, accept the testimony merely because it is given by an expert, nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

**K.      Charts and Demonstrative Exhibits**

In addition, during the trial, including during the arguments of counsel, the parties have used other charts and summaries as demonstrative aids in order to make other evidence more meaningful and to aid you in considering the evidence.  Those demonstrative aids were not admitted in evidence and therefore you cannot ask for them in the course of your deliberations. They are no better than the testimony and the documents upon which they are based, and

26

therefore, you are to give them no greater and no lesser consideration than you would give to the evidence upon which they are based.  It is for you to decide whether these demonstrative aids correctly presented the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider these demonstrative aids if you find that they are of assistance to you in analyzing and understanding the evidence.

###### L.      Rulings on Evidence and Objections

As I have already explained, you should draw no inference or conclusion for or against any party by reason of lawyers making objections or my rulings on such objections. By the same token, nothing I say is evidence. If I commented on the evidence at any time, do not accept my statements in place of your recollection or your interpretation. It is your recollection and interpretation that govern.

Further, do not concern yourself with what was said at side-bar conferences or during my discussions with counsel. Those discussions related to rulings of law.

At times I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times I asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all the evidence.  If, however, I sustained an objection

27

to any evidence, or if I ordered evidence stricken or disregarded, that evidence must be entirely ignored.

### M.      Jurors Not to Speculate About Person Not on Trial

During the trial, you heard the names of several other individuals mentioned in connection with this case.  Some of those other individuals have been mentioned in connection with what the SEC alleges was a securities violation.

I instruct you that you may not draw any inference, favorable or unfavorable, towards the SEC or the Defendant from the fact that any other person is not on trial here.  Further, you may not speculate as to the reasons why those other people are not on trial, or what became of them in the legal system.  Those matters are wholly outside your concern and have no bearing on your duties as jurors in this case.

### N.      Not All Evidence Needed

The law does not require a party to call as witnesses all persons who may have been involved in the case or who may appear to have some knowledge of the matters at issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned during the case.

Each party has had an equal opportunity or lack of opportunity to call any witness. Therefore, you should not draw any inference or reach any conclusions as to what any uncalled witnesses would have said if the witness had been called.

### O.      Sympathy and Impartiality

Under your oath as jurors, you are not to be swayed by sympathy.  You are to be completely fair and impartial.  You are to be guided solely by the evidence, or the lack of evidence, in this case, without regard to the consequences of your decision.  The crucial question

you must ask yourselves as you sift through the evidence is whether the plaintiff has proven the elements of each claim by a preponderance of the evidence.

It would be improper for you to consider, in deciding the facts of this case, any personal feelings you may have about the race, religion, national origin, sex, sexual orientation, disability, or age of any party or witness, or any other such irrelevant factor. It would also be improper for you to consider any sympathy you might feel for an individual in a lawsuit.

You should consider and decide this case as a dispute between parties of equal standing in the community, of equal worth, and holding the same or similar situations in life.

## IV.   Deliberations

### A.   Duty to Deliberate

You will now retire to decide the case. Your function is to weigh the evidence in this case and to determine whether the SEC has established its claims with a preponderance of the evidence. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

Your verdict must be unanimous. This means that each and every one of you must agree upon your verdict. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to consult with one another and to deliberate with a view to reaching an agreement. If you start with one point of view, but after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is one that truly satisfies your judgment and conscience. But you are not to surrender a view of the case that you conscientiously believe, merely because you are outnumbered or because other jurors appear firmly committed to their

views. You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.

In sum, you, the jury, must deliberate as a body, but each of you, as an individual juror, must discuss and weigh your opinions dispassionately, and adopt that conclusion which in your good conscience appears to be in accordance with the truth. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

I instruct you that you are not to discuss the case unless all jurors are present. Four or five jurors together are only a gathering of individuals. Only when all jurors are present do you constitute a jury and only then may you deliberate.

Remember at all times, you are not partisans. You are judges — judges of the facts. Your sole interest is impartially to assess the evidence to determine whether the SEC has established its claims with a preponderance of the evidence.

If you are divided, do not report how the vote stands. Simply state that you are divided. If you have reached a verdict, do not report what it is until you are asked in open court. Simply inform me that you have reached a verdict.

### B.    Right to See Exhibits and Hear Testimony; Communications with Court

You are about to go into the jury room and begin your deliberations. The exhibits that were received into evidence will be provided to you in the jury room. In addition to paper copies of many exhibits, you will be provided with a laptop that contains certain exhibits that could not be presented in hard copy. You will be given an exhibit list that will explain which exhibits can be accessed on the laptop.

If you want any of the testimony to review, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in

requesting portions of the testimony. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for testimony — in fact any communications with the Court — should be made to me in writing, signed by your foreperson, and given to the Marshal or the deputy clerk. In any event, do not tell me or anyone else how the jury stands on any issue until there is a unanimous verdict.

### C.     Juror Note-Taking

If you took notes during the trial, those notes are only an aid to recollection — they are not evidence, nor are they a substitute for your recollection of the evidence in the case. Your notes are not entitled to any greater weight than your actual recollection or the impression of each juror as to what the evidence actually is. I emphasize that if you took notes, you should not show your notes to any other juror during your deliberations, they are only for yourself.

If you did not take notes during the trial, you should not be influenced by the notes of another juror, but instead you should rely upon your own recollection of the evidence. The fact that a particular juror has taken notes does not entitle that juror's views to any greater weight.

### D.     Verdict Form

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. The verdict form does not represent either evidence or instructions on the law.

### E.     Duties of Foreperson

At the beginning of deliberations, you must choose a foreperson. The foreperson does not have any more power or authority than any other juror, and his or her vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. He or she will send out any notes, and when the jury has reached a

verdict, he or she will notify the Marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### F.      Return of Verdict and Jury Oath

After you have reached a unanimous verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict that is announced in Court. Once your verdict is announced in open court and officially recorded, it cannot ordinarily be revoked.

You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law.

I am sure that if you follow your oath, listen to the views of your fellow jurors, and apply your own common sense, you will reach a fair verdict here. Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

### G.      Closing Comments

Finally, all litigants stand equal in this courtroom.  All litigants stand equal before the law.  And all litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

I want to thank you for your time and attentiveness.

You may now begin your deliberations.